UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| CITY OF PLAQUEMINE and RISK MANAGEMENT INC., | ) |  |
|---|---|---|
|  | ) |  |
|  | ) | 3:23-CV-00111-DCLC-DCP |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| TEAM HEALTH HOLDINGS, INC. et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendants Team Health Holdings, Inc.'s ("Team Health Holdings"), Ameriteam Services, LLC's ("Ameriteam"), and HCFS Health Care Financial Services, LLC's ("HCFS") (collectively "Defendants") Motion to Dismiss [Doc. 27], and Motion to Stay Discovery [Doc. 31]. Each of the motions are fully briefed and ripe for resolution. For the reasons that follow: Defendants' Motion to Dismiss [Doc. 27] is **DENIED**; and Defendants Motion to Motion to Stay Discovery [Doc. 31] is **DENIED AS MOOT**.

**I.     FACTUAL BACKGROUND**

This is one of three class action cases pending in this Court against Defendants.[1] Each case the parties have engaged in extensive briefing and similar motion practice. For example, in the *Buncombe County* case, Defendants filed a similar motion to dismiss based on Buncombe County's purported failure to adequately plead a RICO case in its First Amended Complaint. The

---

[1] *See United Health Care Services, Inc. et al. v. Team Health Holdings, Inc. et al.* 3:21-cv-364 (E.D.TN); *Buncombe County, North Carolina v. Team Health Holdings, Inc.*, 3:22-cv-420 (E.D.TN); *Risk Management Inc. v. Team Health Holdings, Inc.*, 3:22-cv-456 (E.D.TN).

1

Court denied that motion. Because the factual allegations in this case are nearly identical as those made by Buncombe County, the Court reaches the same conclusion here.

Risk Management Inc. ("RMI") is the administrative service agent for the Louisiana Municipal Risk Management Agency ("LMRMA"), a non-party in this matter [Doc. 28, pg. 1]. LMRMA is an interlocal risk management agency created under Louisiana law that, using "funds contributed by various municipalities, . . . processes claims for employment-related emergency medical care rendered to the municipalities' employees" [*Id.*]. Plaintiff City of Plaquemine ("Plaintiff") and other members of the self-insurance fund are local governments and municipalities in Louisiana that contribute their resources to the self-insurance fund to provide workers' compensation benefits to their employees [*Id.*]. Plaintiff is one of at least six the municipalities that participate in the pooled workers' compensation self-insurance by LMRMA [*Id.*]. RMI's duties as administrative service agent for LMRMA include "demand and receive the medical records underlying each emergency room encounter" before paying incoming bills on behalf of member municipalities [*Id.*].

Team Health Holdings is the parent company of several entities, including Ameriteam and HCFS [Doc. 21, pg. 9]. It provides emergency room "staffing and administrative services to hospitals through a network of subsidiaries, affiliates, and nominally independent entities and contractors that operate in nearly all states…" [*Id.*, pg. 11]. Plaintiff alleges that Defendants "promise hospitals, physicians, and ER staff that it will increase efficiency and profitability and lift the administrative burdens off practitioner's shoulders." [*Id.*, pg. 5]. Team Health assigns billing to HFCS, which, according to Plaintiff, "overbills by using improperly chosen Current Procedural Terminology ("CPT") codes in conjunction with the billing." [*Id.*]. Plaintiff alleges that emergency room physicians who treat the patient "do not see the insurance claims that Team

Health creates, even though the claims are submitted in their names," and the payments for the medical services goes directly to Defendants. [*Id.* at pg. 14]. Defendants then pay physicians a "fixed hourly or per patient or per transaction fee." [*Id.*]. Defendants keep most of the payments. [*Id.*]. Plaintiffs allege that "[w]hen local medical staff complete their work with a patient, they submit medical records to HCFS. HCFS then engages in upcoding [and] overbilling…." [*Id.*, pg. 17]. Plaintiff contends this is the essence of Defendants' fraud.

## II. PROCEDURAL BACKGROUND

Based on the above facts, RMI and Plaintiff initiated this action against Defendants [Docs. 1, pg. 27]. RMI and Plaintiff assert claims for: (1) civil violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) [Doc. 1, pgs. 48-55]; (2) conspiracy to violate RICO, 18 U.S.C. § 1962(d) [*Id.*, pgs. 55-57]; (3) unjust enrichment [*Id.*, pg. 57] and (4) equitable, declaratory, or injunctive relief [*Id.*, pg. 58]. As Buncombe County did in its case against Defendant, Plaintiff brings this action on behalf of itself and all others similarly situated under Fed.R.Civ.P 23(a), (b)(1)-(3), as well as Rule 23(c)(4) in the alternative, as representative of a class defined as follows:

    a. **RICO Class:** All payors that compensated Team Health or an entity billing on its behalf for medical treatment in the United States or its territories during the four years[34] prior to the filing of the Complaint in this action.

    b. **Unjust Enrichment Class:** All payors that compensated Team Health or an entity billing on its behalf for medical treatment in the United States or its territories during the three years prior to the filing of the Complaint in this action.

    c. **Declaratory Judgment Class:** All payors that compensated Team Health or an entity billing on its behalf for medical treatment in the United States or its territories at any time prior to the filing of the Complaint in this action.

    d. United States governmental programs including Medicare, Medicaid, and Tricare are *excluded* as class members.

3

[Doc. 21, pgs. 43-44]. It represents that the members of the class are so numerous that joinder is impracticable [*Id.*, pg. 44]. Plaintiff alleges that the class is readily identifiable and its claims are typical of the claims of the members of the class [*Id.*]. It also represents that it would fairly and adequately protect the interests of class members because its interest coincides with those of the members. [*Id.*].

Plaquemine filed its first amended complaint ("Amended Complaint"), in which it stated it omitted RMI as a party and stated Plaquemine would proceed on its behalf of itself and similarly situated entities that suffered damages in their own right [*Id.*, pg. 1]. Defendants now move to dismiss Plaintiff's Amended Complaint [Doc. 27] and stay discovery pending resolution of the motions [Doc. 31].

### III.     MOTION TO DISMISS

#### A.     Injury in Fact

Defendants move to dismiss, in part, pursuant to Rule 12(b)(1), which subjects a complaint to dismissal if the Court lacks subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). This includes motions to dismiss based on a purported lack of standing. *Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 F. App'x 409, 410–11 (6th Cir. 2013). The burden is on the plaintiff to prove the existence of standing. *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

A Rule 12(b)(1) motion can challenge the existence of subject matter jurisdiction either facially or factually. *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). A facial attack challenges the sufficiency pleadings; thus, when faced with a facial attack, the Court must accept the allegations in the complaint as true and determine from the four corners of the complaint whether the plaintiff has alleged a basis for subject matter jurisdiction. *Parsons v. United States Dep't of Justice*, 801 F.3d 701, 706 (6th Cir. 2015); *Cartwright*, 751 F.3d at 759. By contrast, a

4

factual attack challenges the veracity of the allegations underlying the assertion of subject matter jurisdiction. *Cartwright*, 751 F.3d at 759; *see also L.C. v. United States*, No. 22-6105, 2023 WL 6321726, at *4 (6th Cir. Sept. 28, 2023) (unreported). The Court, when considering a factual challenge, may consider and weigh matters outside the pleadings to determine whether the plaintiff has established subject matter jurisdiction by a preponderance of the evidence. *Cartwright*, 751 F.3d at 759-60. Defendants' Motion to Dismiss lodges a facial attack [Doc. 29, pg. 16].

Defendants argue that Plaintiff's Amended Complaint is subject to dismissal under Rule 12(b)(1) because Plaintiff failed to allege a particularized injury-in-fact to have standing in federal court [Doc. 28, pgs. 8-10]. Defendants argue that Plaintiff cannot remedy its lack of standing with an assignment of claims because the Amended Complaint fails to allege facts demonstrating that the assignments were valid under Louisiana law and that the assignments apply to the particular claims at issue [*See* Doc. 28, pgs. 15–20]. Defendants argue that Plaintiff cannot maintain this suit based on an alleged injury paid out of funds belonging to one of the other five municipalities described in the Amended Complaint [*Id.*, pg. 16]. Defendants argue that the alleged facts in the Amended Complaint must establish that the upcoded claims were paid out of Plaintiff's assets and that the Amended Complaint fails to state "that a single purportedly upcoded claim was paid out of [Plaintiff]'s assets" [*Id.*, pg. 17]. Defendants argue that the Plaintiff's general allegation in the Amended Complaint that the "payor" was injured by the alleged upcharges does not demonstrate that Plaintiff "personally suffered an actual harm above the speculative level" [*Id.*, pg. 18]. Plaintiff responds that this Court's decision in *LMRMA*, which holds that member municipalities of LMRMA who were injured have standing to sue. 2022 WL 17086389, at *4-5. Plaintiff is one of the member municipalities of LMRMA that overpaid for emergency room care that Defendants

5

billed. [*Id.*, pg. 39]. Plaintiff argues that part "of the money paid for each claim comes from Plaintiff's money held in the pool, thereby making it a real party in interest" [*Id.*].

Article III limits the Court's judicial power to "Cases" and "Controversies." U.S. Const. art. III, § 2. This requires a "live dispute between adverse parties," because of which the plaintiff must have "standing." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020); *Valley Forge Christian College v. Americans United for a Separation of Church & State*, 454 U.S. 464, 471 (1982). To have standing, the plaintiff must "have suffered an injury-in-fact, fairly traceable to the defendant's allegedly unlawful conduct, and likely to be redressed by the requested relief." *National Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). Absent all three, the plaintiff lacks standing, and the complaint must be dismissed without prejudice. *Thompson v. Love's Travel Stops & Country Stores, Inc.*, 748 F. App'x 6, 10 (6th Cir. 2018). Because Defendants attack only Plaintiff's showing as to whether it has suffered an injury-in-fact, the Court confines its discussion to that element.

The first element of standing requires the party invoking the Court's jurisdiction to show that it "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). A particularized injury is one that "affect[s] the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n.1 (1992). Put differently, the "party seeking review [itself] must be among the injured." *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972). The necessary implication of the particularized-injury requirement is that the plaintiff "must assert [its] own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991).

Plaintiff identifies itself as the member municipality of LMRMA, which is a group self-

6

insurance fund [Doc. 38, pgs. 9, 12]. "A self-insured plan is one in which benefits are paid from contributions supplied by the employer without the assistance of outside insurance." 1A Steven Plitt, et al., *Couch on Insurance* § 10.1 n.1 (3d ed June 2023 update) (citing *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 732 (1985)). Similarly, Black's Law Dictionary defines "self-insurance" as "[a] plan under which a business maintains its own special fund to cover any loss." *Self-Insurance*, Black's Law Dictionary (11th ed. 2019). In self-insurance plans it is therefore the employer who assumes the financial risk of paying claims. *See Michigan Catholic Conf. & Catholic Family Servs. v. Burwell*, 807 F.3d 738, 743 (6th Cir. 2015), *vacated and remanded on other grounds by Michigan Catholic Conf. v. Burwell*, 578 U.S. 993 (2016).

Here, the insurance fund at issue was created by local governments in Louisiana pooling their money together to create for their employees a self-insurance fund [Doc. 38, pg. 2]; La. Stat. Ann. § 33:1342(5)]. When the municipal employees receive health care from a provider, the "health care provider[] bill[s] [an] administrator for the health care services, and the administrator then collects the full payment from the employers, along with a processing fee." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 602 (6th Cir. 2007). Plaintiff alleges that it is one of the members of the local governments that contributed to the group self-insurance fund [Doc. 27, pg. 13]; *see Louisiana Mun. Risk Mgmt. Agency*, No. 3:22-CV-00104, 2022 WL 17086389, at *4]. This court has held that the alleged upcoding "would harm the local governments that contribute to the self-insurance that [RMI] administers on behalf of those governments." *Louisiana Mun. Risk Mgmt. Agency*, No. 3:22-CV-00104, 2022 WL 17086389, at *4. Consistent with that holding, Plaintiff has alleged an injury-in-fact under Article III that would allow it to bring the instant suit.

B. **Real Party in Interest**

Citing Federal Rule of Civil Procedure 17(a), Defendants argue that Plaintiff is not the real

7

party in interest because Plaintiff assigned its rights to sue to RMI. Defendants cite *Penn. R.R. Co. v. City of Girard*, 210 F.2d 437, 440 (6th Cir. 1954) and argue that in assigning right to RMI, Plaintiff "made a judicial admission as to the existence of an assignment from Plaquemine to RMI, and such admission survives the filing of the amended complaint." *Id.* ("[P]leadings withdrawn or superseded by amended pleadings are admissions against the pleader in the action in which they were filed."). Thus, RMI, not Plaintiff, is the real party in interest under Rule 17. Plaintiff responds that it has sufficiently pleaded standing to bring this action. Plaintiff explains that it filed this action on March 29, 2023 [Doc 1].

Federal Rule of Civil Procedure 17(a) provides, "[a]n action must be prosecuted in the name of the real party in interest." Plaintiff brought this claim in its own right and RMI was named as a co-plaintiff [Doc. 1]. The complaint states: "Plaintiff, [Plaquemine] *individually and along with* its administrator [RMI]" sue Defendants [Doc. 1, pg. 1]. (Emphasis added). The complaint lists *both* Plaquemine and RMI as Plaintiffs [Doc. 1, pgs. 7, 9]. Then, on May 5, 2023, Plaquemine filed the Amended Complaint [Doc. 21], in which it removed RMI as a party and proceeded on its own behalf and similarly situated entities who sustained damages in their own right, as identified by this Court's decision in *La. Mun. Risk Mgmt. Agency v. Team Health Holdings, Inc.*, ("*LMRMA*"), No. 3:22-CV-00104-DCLCJEM, 2022 WL 17086389 (E.D. Tenn. Nov. 18, 2022). [*Id.*, 8-9]. Accordingly, Plaquemine is the real party in interest as required by Federal Rule of Civil Procedure 17(a).

### C. Duplicate Claims

Defendants argue that Plaintiff's Amended Complaint contains "the same causes of action, parrots the same representative examples of alleged upcoding, and seeks certification of the same classes as *RMI*" [Doc. 28, pg. 19]. Defendants argue that Plaintiff's Amended Complaint should

8

be dismissed as duplicative of RMI's lawsuit. Plaintiff responds that its Amended Complaint does not duplicate the claims in *RMI* [Doc. 38, pg. 13]. Plaintiff argues that the parties are situated differently, and "having both direct and assigned plaintiffs to represent the putative class will avoid procedural problems like the Court identified in *LMRMA*" [*Id.*]. Plaintiff states that it is entitled to sue for the harm ("paying more than it should") caused by Defendants overbilling, while RMI can sue for the harm that Defendants caused to the other member municipalities who assigned their claims to RMI [*Id.*]. Here, Plaintiff and RMI clearly have separate claims. Plaintiff alleges harm Defendants directly caused to Plaintiff, while RMI is alleging harm on behalf of the other member municipalities. Plaintiff distinguishes its Amended Complaint, by suing "individually" [Doc. 21, pg. 1] and "directly" [*Id.*, pg. 2], from RMI and other member municipalities that assigned their claims to RMI, who then sued on their behalf in *Louisiana Municipal Risk Mgmt. Agency v. Team Health Holdings, Inc.*, No. 3:22-CV-00104-DCLC-JEM (E.D.Tenn.) [*Id.*, 2].

### D. Civil RICO Claim

Defendants argue that Plaintiff has failed to state a civil RICO claim as a matter of law because Plaintiff 1) fails to plausibly allege an injury to its business or property, 2) fails to allege predicate racketeering offenses, 3) fails to allege RICO proximate cause, and 4) fails to adequately allege an enterprise distinct from Defendants.

RICO provides a private cause of action for treble damages and attorney fees to "[a]ny person injured in his business or property by reason of a violation of" one of the four provisions of 18 U.S.C. § 1962. 18 U.S.C. § 1964(c). A substantive RICO claim has four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). For the reasons stated herein, Plaintiff plausibly alleges injury to its business or property and sufficiently pleads a RICO claim.

9

### 1. Injury to Business or Property

To satisfy the threshold injury requirement, plaintiffs plausibly allege "an actual injury to its business or property 'by reason of' [the] defendant's section 1962 transgression." *Pik-Coal Co. v. Big Rivers Elec. Corp.*, 200 F.3d 884, 889 (6th Cir. 2000). Defendants argue that for the same reasons Plaintiff lacks Article III standing, Plaintiff fails to allege an injury for purposes of RICO. As previously discussed, the Court finds that Plaintiff has Article III standing. And for these same reasons, Plaintiff has plausibly alleged that Defendants actions caused an actual injury to Plaintiff's business or property.

### 2. Enterprise

As argued in *Buncombe*, Defendants argue that Plaintiff failed to allege what distinct role each Defendant played to facilitate the overbilling scheme, without which there is no RICO enterprise [Doc. 28, pgs. 28-29]. Defendants argue that the conduct alleged is also indistinct to the ordinary affairs of each business [*Id.*]. And Defendants argue that the use of their separately incorporated nature is not enough without any indication that their separately incorporated status was used to facilitate the scheme [*Id.*]. Plaintiff disagrees, arguing that, like the plaintiff in *United Healthcare, Inc.*, the Amended Complaint alleges sufficient facts to establish that Defendants used the separately incorporated nature of their subsidiaries to perpetrate a fraudulent scheme [Doc. 38, pg. 14].

A RICO "'enterprise' includes any . . . union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Because only "persons" who conduct the affairs of an "enterprise" through a pattern of racketeering can be liable under RICO, a plaintiff must allege the existence of two distinct entities: (1) a "person" against whom the claim is asserted; and (2) "an 'enterprise' that is not simply the 'person' referred to by a different name." *Cedric Kushner*

10

*Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). Practically speaking, this means that "a party cannot sue Corporation X in a [c]ivil RICO action in which Corporation X is alleged to be the enterprise." *Compound Prop. Mgmt., LLC v. Build Realty, Inc.*, 462 F. Supp. 3d 839, 856 (S.D. Ohio 2020). Nor can a parent corporation enter into an enterprise with its subsidiaries. *In re ClassicStar Mare Lease, Litig.*, 727 F.3d 473, 493 (6th Cir. 2013). "However, the distinctness requirement may be satisfied when the parent corporation uses the separately incorporated nature of its subsidiaries to perpetrate a fraudulent scheme." *Id.*

Here, Plaintiff alleges that the RICO enterprise consisted of Team Health Holdings, Team Health Holdings' subsidiaries, and other legal entities controlled by Team Health Holdings to staff emergency departments [*See* Doc. 21, pg. 49]. The County contends that each Defendant entered into an association-in-fact enterprise with each other and with the medical groups with which the organization affiliates [*See id.*]. The County explains that Team Health Holdings conducts and directs the enterprise but does not bill payors under its own name, instead using HCFS to do so pursuant to policies set by Team Health Holdings and Ameriteam [*See* Doc. 21, pg. 48]. Further, the County explains how the TeamHealth organization's alleged fraudulent scheme was separate from the rest of the activities in which the enterprise engaged, such as staffing emergency departments in hospitals and providing billing services to unaffiliated providers [*See* Doc. 21, pg. 49]. At this stage of the litigation, Plaintiff's allegations suffice to establish that Defendants use the "separately incorporated nature of its subsidiaries to perpetrate a fraudulent scheme." *In re ClassicStare Mare Lease Litig.*, 727 F.3d at 493; *cf. United Healthcare Servs., Inc. v. Team Health Holdings, Inc.*, No. 3:21-CV-00364, 2022 WL 1481171, at *11 (E.D. Tenn. May 10, 2022) (concluding similarly).

### 3. Proximate Cause

Plaintiffs "attempting to assert an injury 'by reason of' a RICO violation must demonstrate both but-for causation and proximate causation." *ClassicStar*, 727 F.3d at 487. "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006); *Wallace v. Midwest Fin. & Mortg. Servs. Inc.,* 714 F.3d 414, 418-19 (6th Cir. 2013) (holding to establish injury by reason of an enterprise's racketeering activity, a plaintiff must allege that its harm is the proximate result of the Defendant's activity). A plaintiff "need only show that the defendants' wrongful conduct was 'a substantial and foreseeable cause' of the injury and the relationship between the wrongful conduct and the injury is 'logical and not speculative.'" *ClassicStar*, 727 F.3d at 487. Importantly, "proximate cause is a 'flexible concept' and must be assessed on a case-by-case basis." *Wallace*, 714 F.3d at 419.

Here, Plaintiff alleges sufficiently the proximate cause required to support its RICO claim. Plaintiff alleges that Defendants directly injured Plaintiffs, as evidenced by Plaintiff's overpayments to Defendants for upcoded charges [Doc. 21, pgs. 67, 168]. Plaintiff alleges that such injury was specifically caused by Defendant's fraudulent upcoding scheme.

### 4. Racketeering Activity

As argued in *Buncombe*, Defendants argue that the predicate acts of racketeering alleged in the Amended Complaint failed to comply with Rule 9(b). Plaintiff responds that the allegations in the Amended Complaint describe the fraudulent scheme and predicate acts of racketeering with sufficient particularity to survive dismissal [Doc. 38, pg. 9].

Mail and wire fraud can serve as predicate acts of racketeering activity. 18 U.S.C. § 1961(1). Both share the same elements: "(1) a scheme or artifice to defraud; (2) use of the mails or interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim

12

of money or property." *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 264 (6th Cir. 2014). "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money." *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005). "This means not only that a defendant must knowingly make a material misrepresentation or knowingly omit a material fact, but also that the misrepresentation or omission must have the purpose of inducing the victim of the fraud to part with property or undertake some action that he would not otherwise do absent the misrepresentation or omission." *United States v. DeSantis*, 134 F.3d 760, 764 (6th Cir. 1998). And the plaintiff must establish that the defendant acted with either a specific intent to defraud or with recklessness with respect to the potentially misleading information. *Id.*

Fraud-based RICO claims are subject to the heightened pleading requirements of Rule 9(b). *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 404 (6th Cir. 2012). A plaintiff "(1) must specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* (internal quotation marks omitted). However, the Sixth Circuit reads Rule 9(b) "liberally" because of the "influence of Rule 8, which requires a short and plain statement of the claim." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) (internal quotation marks omitted).

Here, the Amended Complaint sufficiently alleges predicate RICO acts with enough particularity to avoid dismissal. Plaintiff's RICO claim is predicated on the submission of claims with inflated CPT codes. Although Defendants argue that which CPT code is submitted is a matter of opinion, "opinions are not, and have never been, completely insulated from scrutiny. At the very least, opinions may trigger liability for fraud when they are not honestly held by their maker, or

13

when the speaker knows of facts that are fundamentally incompatible with is opinion." *United States v. Paulus*, 894 F.3d 267, 276 (6th Cir. 2018). It is that latter point which forms the basis for Plaintiff's theory of liability.

Plaintiff also alleged sufficient facts to apprise Defendants of the nature of the fraudulent claims, when they were made, and how those claims were fraudulent in Defendants' overbilling scheme [Doc. 21, pg. 57]. Specifically, Plaintiff alleges that Defendants used the wires and mail to submit fraudulent claims, coordinate their unlawful activities, and obtain payment for their fraudulent claims [*See* Doc. 21, pg. 53]. These allegations are sufficient to survive both Rule 9(b)'s heightened pleading requirement and the pleading requirements for mail and wire fraud predicates under RICO [Fed.R.Civ.P. 9(b); *see Iqbal*, 556 U.S. 678]. Moreover, Plaintiff has sufficiently injury, in compliance with 18 Unites States Code section 1964 (c). Accordingly, Defendants' Motion to Dismiss is **DENIED** with respect to the Plaintiff's substantive RICO claim.

### E.     RICO Conspiracy

Defendants argue that Plaintiff's failure to plead a plausible RICO claim dooms any RICO conspiracy claim [Doc. 28, pgs. 21-22]. Plaintiff disagrees [Doc. 38, pgs. 20-21]. A RICO conspiracy claim shares the same elements as a substantive claim, along with "the existence of an agreement to violate the substantive RICO provision." *Heinrich*, 668 F.3d at 411. "An agreement can be shown if the defendant objectively manifested an agreement to participated directly or indirectly in the affairs of an enterprise through the commission of two or more predicate crimes." *Id.*

Here, Plaintiff plausibly pleaded a RICO conspiracy claim. As discussed above, Plaintiff plausibly alleges the disputed elements of a substantive RICO claim. Plaintiff further alleges that Defendants each conspired to profit from a pattern of racketeering activity involving the

14

TeamHealth organization. And their objective manifestation of assent can be inferred from the same facts the Court recognized plausibly allege predicate acts of racketeering. Defendants' Motion to Dismiss is therefore **DENIED** with respect to Plaintiff's RICO conspiracy claim.

F. **Unjust Enrichment**

Defendants argue that Plaintiff's unjust enrichment claim must be dismissed because "(1) unjust enrichment is precluded under Louisiana law where a plaintiff simultaneously alleges a "delictual" cause of action, such as a RICO claim; and (2) unjust enrichment must be plead[ed] with particularity when, as here, the claim is grounded in fraud, which Plaintiff fails to do."

As discussed above in connection with Plaintiff's RICO claim, the Plaintiff has pleaded sufficiently particularized facts to satisfy Rule 9(b). The Court need not therefore consider at this stage whether Louisiana law would preclude the unjust enrichment claim. Defendants' Motion to Dismiss is DENIED with respect to the Plaintiff's unjust enrichment claim.

G. **Declaratory and Injunctive Relief**

Defendants last argue that Plaintiff lacks standing to assert a claim for injunctive or declaratory relief because Plaintiff's substantive causes of action are deficient as a matter of law [Doc. 28, pgs. 31-32]. Defendant also argues that equitable relief is not available to private litigants under RICO, thus, Plaintiffs requests should be dismissed [*Id.*, pg. 32]. Plaintiff responds that its requests for equitable relief are properly pleaded as independent causes of action and as a remedy if liability is found under other claims [Doc. 38, pg. 25]. It claims it has standing because it is almost certain it will continue to pay invoices for medical services upcoded by Defendants [Doc. 38, pgs. 21-22]. And Plaintiff argues that the Court should exercise jurisdiction over the claim [*Id.*, pg. 26].

1. **Standing**

The Declaratory Judgment act authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A threshold requirement for declaratory relief is that there be an "actual controversy," which is coextensive with the "case or controversy" requirement of Article III. 28 U.S.C. § 2201(a); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The party seeking declaratory relief must therefore establish that he "suffered an injury-in-fact, fairly traceable to the defendant[s'] allegedly unlawful conduct, and likely to be redressed by the requested relief." *National Rifle Assoc. of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997). Defendants focus on existence of an injury-in-fact and redressable harm.

Plaintiff pleaded sufficient facts to establish standing under the Declaratory Judgment Act. Plaintiff alleges that Defendants conduct an ongoing racketeering enterprise by which they cause inflated billing codes to be submitted to insurance payors [*See* Doc. 21]. The allegedly fraudulent claims include claims submitted by providers staffed by Defendants through the date of the Amended Complaint [Doc. 21, pgs. 26-32]. And the alleged overbilling scheme is built-in to the way Defendants do business [Doc. 21]. Altogether, the Court finds these facts sufficient at the pleading stage to establish a "substantial risk" that the County will suffer future harm because of Defendants' alleged scheme. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013). And the Court finds that the alleged harm is redressable through a declaratory judgment. *Cf. State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 562 (D. Md. 2019).

**2. Discretion**

The Supreme Court has explained that the Declaratory Judgment Act is procedural in nature, *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); thus, there must be an independent basis of subject matter jurisdiction for the Court to consider a claim for declaratory

relief under the statute, *Haydon v. MediaOne of Se. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003). Even when subject matter jurisdiction exists, whether to consider a claim for declaratory relief is discretionary. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

Because Plaintiff's other claims survive, the Court retains federal question jurisdiction over the lawsuit. The Court ordinarily would then have to determine whether to exercise its discretion over the County's declaratory judgment claim based on five factors. *Byler v. Air Methods Corp.*, 823 F. App'x 356, 365 (6th Cir. 2020); *see Grand Trunk W. R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). But when, as here, the plaintiff "seeks relief in addition to a declaratory judgment, such as damages or injunctive relief, both of which a court must address, then the entire benefit derived from exercising discretion not to grant declaratory relief is frustrated, and a stay or dismissal would not save any judicial resources." *Adrian Energy Assocs. v. Michigan Pub. Serv. Comm'n*, 481 F.3d 414, 422 (6th Cir. 2007). Defendants' Motion to Dismiss is therefore DENIED with respect to Plaintiff's claim for declaratory relief.

Accordingly, Defendants' Motion to Dismiss [Doc. 27] is **DENIED**, and Defendants' Motion to Stay Discovery [Doc. 31] is **DENIED AS MOOT.**

**SO ORDERED:**

s/Clifton L. Corker<br>United States District Judge