# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
### AT GREENEVILLE

| | |
|---|---|
| **BUNCOMBE COUNTY, NORTH CAROLINA, individually and on behalf of all those similarly situated,** | ) ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) **Case No. 3:22-cv-00420-DCLC-DCP** ) |
| **TEAM HEALTH HOLDINGS, INC., AMERITEAM SERVICES, LLC, and HCFS HEALTH CARE FINANCIAL SERVICES, LLC,** | ) ) ) ) ) |
| **Defendants.** | ) ) |
| **CITY OF PLAQUEMINE, individually and on behalf of all those similarly situated,** | ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) **Case No. 3:23-cv-00111-DCLC-DCP** ) |
| **TEAM HEALTH HOLDINGS, INC., AMERITEAM SERVICES, LLC, and HCFS HEALTH CARE FINANCIAL SERVICES, LLC,** | ) ) ) ) ) |
| **Defendants.** | ) |

### PLAINTIFF BUNCOMBE COUNTY, NORTH CAROLINA'S BRIEF IN SUPPORT OF MOTION FOR PROTECTIVE ORDER AND TO QUASH DEPOSITION NOTICE TO NONPARTY BLUE CROSS AND BLUE SHIELD OF NORTH CAROLINA AND TO DEEM DOCUMENTS NON-CONFIDENTIAL UNDER PROTECTIVE ORDER

Plaintiff, Buncombe County, North Carolina, pursuant to LR 7.1 and Rule 26(c)(1)(A) of the Federal Rules of Civil Procedure, hereby respectfully files its brief in support of its motion requesting that the Court enter a protective order to bar and quash the deposition notice and subpoena issued by Defendants, Team Health Holdings, Inc., Ameriteam Services, LLC and HCFS

1

Health Care Financial Services, LLC, directed to nonparty Blue Cross and Blue Shield of North Carolina ("Blue Cross NC"). In the alternative, and only in the event that the Court rules that the deposition should proceed, Plaintiff moves the Court to rule that certain documents produced by Defendants be deemed to have no "confidential" or "attorneys eyes only" status under the Protective Order, so they can be used at the deposition if it proceeds. *See* Doc. 66.

1. **Introduction.**

Defendants seek to take the deposition under Rule 30(b)(6) of nonparty Blue Cross NC. The deposition was noticed to occur more than three months after the August 1 due date to serve out written discovery and after the deadline for conducting Rule 30(b)(6) depositions under the Court's Scheduling Order and therefore the notice and subpoena should be deemed ineffective. The deposition is scheduled for December 9, 2025. However, under the Scheduling Order, all Rule 30(b)(6) depositions were to be concluded by November 21, 2025. It further would prejudice the Plaintiff for this deposition to occur in December 2025 which is when the Plaintiff is working with its experts for the class certification motion and expert reports coming due in early 2026 under the Scheduling Order. *See* Doc. 122 (Scheduling Order, reflecting Plaintiff's opening expert reports are due on January 5, 2026).

In addition, the notice and subpoena should be quashed and a protective order entered because Defendants have stated that if the deposition occurs, they intend to refuse to allow Plaintiff to question the Blue Cross NC witness using documents Defendants have produced designated as "confidential" or "attorney eyes only" under the Protective Order, Doc. 66. Plaintiff must be able to use these documents at a deposition of Blue Cross NC to protect its rights and the rights of the class and to be able to question Blue Cross NC effectively regarding core class certification issues if that the deposition goes forward. Blue Cross NC refuses to agree to the Protective Order

2

restrictions on its ability to use "confidential" documents outside of the litigation in the event its corporate representative is shown them at the deposition, since to the extent the documents reflect the RICO malfeasance of Defendants, Blue Cross NC should have the freedom to review them with regard to the entirety of its business.

As it stands, Plaintiff will be unduly and unfairly prejudiced if the deposition proceeds under Defendants' current position with regard to the documents. Accordingly, Plaintiff is entitled to entry of a protective order barring the deposition at the present time. *See* Fed. R. Civ. P. 26(c)(1)(A) (allowing entry of protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense").

Plaintiff has sent to Defendants a list of documents which Defendants have produced and which Plaintiff must be able to use if the deposition of Blue Cross NC occurs. Blue Cross NC understandably refuses to agree to the Protective Order requirement that anything it learns from these documents can only be used in this case. Plaintiff has accordingly asked Defendants to remove the "confidential" or "attorneys eyes only" designations on these documents. Defendants refuse. Defendants' intransigence means under the Protective Order, in the event of a deposition of Blue Cross NC, Plaintiff would not be able to use the documents with Blue Cross NC or introduce them. Blue Cross NC declines to agree to maintain confidentiality of the documents and cannot be forced to agree to the Protective Order as a nonparty. The result is that unless and until the Court resolves the parties' controversy as to whether the documents should be deemed to have "confidential" status, Plaintiff cannot use them at a deposition of Blue Cross NC. This is palpably unfair and prejudicial.

Thus, for example, Defendants at a Blue Cross NC deposition could ask Blue Cross NC's representative about auditing practices or about bills coded at CPT level 99285 that Blue Cross

3

NC received and the County and other self-funded plan sponsors paid. At the same time, Plaintiff would be unable to use documents showing that Defendants failed to abide by the governing standards for coding, and Blue Cross NC therefore never should have had to pay the bills in the first place – on a classwide basis. Plaintiff would be unable to introduce documents showing how Defendants ███████████████████████████████████████. Defendants have labeled the relevant documents as confidential and refuse to remove the confidentiality label even though the Court has cited to the facts regarding the Marshfield coding tool on the public record in its most recent Order. Doc. 163, p. 33.

The Court should also be aware that on November 22, 2025, Defendants inexplicably and long after the deadline for document discovery produced a voluminous spreadsheet purporting to list ███████████████████████████████████████████ ███████████████████████████████████████████ Defendants have never explained why they just now produced this spreadsheet. The spreadsheet is selective and does not include information regarding ███████████████████████ ████████████████████████. None of the backup documents or underlying documents from which the spreadsheet was prepared were produced. The spreadsheet is incomplete. Under Defendants' position, Plaintiff would be unable to use any such materials at the deposition. Even though the spreadsheet ████████████████, Plaintiff would be unable to question the witness about it and about ████████████████████ Meanwhile, Defendants could ask Blue Cross NC's representative about Blue Cross NC auditing.

Under Defendants' unreasonable position, Plaintiff would be unable to show the Blue Cross NC witness a copy of Team Health's uniform coding policies, since they are all labeled confidential. Defendants have advised the Court that they seek to elicit testimony from Blue Cross

NC to purportedly show that insurers and TPAs use different policies. *See* Doc. 166, Defendants' brief filed November 26, 2025, p. 4. Meanwhile, Plaintiff would be unable to show to Blue Cross NC documents showing Team Health's own coding policies since they are all labeled confidential. Plaintiff's contention is that Team Health used the same coding grid for all the bills it sent whether they went to Medicare or private payors or insurer/TPAs. Defendants represented to all of them via Form 1500s that their coding was truthful and accurate. It was not, on a classwide basis. However, without Court intervention, Plaintiff would be unable to show the Blue Cross NC deponent documents reflecting that Defendants ███████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ██████████████ Plaintiff would be unable to show to the deponent internal corporate memos in which ████████████████████████████████████████████████████████ Plaintiff would be unable to show the deponent documents reflecting that ███████████████████████████ ████████████████████████████████████████████████████████████████ █████████████████████████████ At a Blue Cross NC deposition, Defendants would be able to ask about what Blue Cross NC's auditing policies were, while Plaintiff would not be able to show Blue Cross NC what Team Health's own auditing policies were. The deposition under these circumstances would be manifestly unfair and prejudicial to Plaintiff. The deposition should either be cancelled or the documents should be deemed not confidential so Plaintiff can use them at the deposition if one does occur.

Defendants are expected to question Blue Cross NC at a deposition regarding why is it that Blue Cross NC is continuing to process Team Health affiliate bills and allow self-funded plan sponsors to pay them, if Plaintiff's allegations are true. Plaintiff must be able to refute any such lines of questions by showing Blue Cross NC the core documents reflecting the concealed classwide fraud and asking if such facts would alter Blue Cross NC's opinion or conduct going forward. It is Defendants who bring this situation upon themselves by seeking to take the deposition in Phase One while refusing to remove the "confidential" label on their produced documents. These documents in fact have no "trade secret" basis to be confidential at all. If the deposition is cancelled the Court need not consider nor rule on the confidentiality issues at this time. However, if the deposition is to occur then the issue must be resolved.

Accordingly, because Team Health chooses to continue to insist on the confidentiality designation for the documents, the motion for a protective order should be granted and the deposition of Blue Cross NC should not proceed as part of Phase One discovery because it would prejudice and oppress the Plaintiff under Rule 26(c)(1)(A).

In the alternative, if the deposition is otherwise to proceed, then Plaintiff moves the Court under the Protective Order to find that each of the documents discussed below should not be deemed "confidential" and may be used at the deposition. Under the Protective Order, Doc. 66, the opponent of a confidentiality designation may challenge such a designation. Doc. 66, Sec. 6.1. In that event, the burden rests on the proponent of confidentiality – here, Defendants – to rebut the presumption in favor of open courts and public records. Doc. 66, Sec. 6.3. Plaintiff has met the meet-and-confer requirements under the Protective Order. *Id.*, Sec. 6.2; *compare* Counsel Declaration exhibits reflecting meet-and-confer correspondence.

Here, none of the subject documents are subject to any privilege designation. None of the documents reflect any legitimate trade secrets. None of the documents are subject to any privilege or work product protection. Accordingly, the Court should deem these documents to be not subject to any claim by Defendants of "confidential" or "attorneys eyes only" status.

**2.  Procedural Background.**

This case was originally filed on November 22, 2022. Doc. 1. The Court entered a Phase One Scheduling Order for discovery on June 30, 2025. Doc. 122. The Scheduling Order set out dates for the remaining portion of discovery that was to be needed before Plaintiff designated its experts and the class certification motion was filed. Under that Scheduling Order, the deadline for completing any depositions under Rule 30(b)(6) was November 21, 2025. Doc. 122, p. 2.

Defendants sent a notice and subpoena under Rules 30(b)(6) and 45 dated November 7, 2025 to depose Blue Cross NC. This written discovery was sent out more than three months after the written discovery deadline of August 1 per the scheduling order. Doc. 122, p. 2. Defendants had not previously raised the issue of taking a deposition of Blue Cross NC in status conferences with the Court. Defendants had months of time to take any depositions, and yet did not send a notice for the deposition of Blue Cross NC until November 7, 2025 which was only three weeks prior to the scheduled deadline for depositions. Further, the notice and subpoena purported to schedule the Blue Cross NC deposition to occur on December 9, 2025. S*ee* Doc. 157-1, copy of Defendants' notice and subpoena dated November 7, 2025, addressed to Blue Cross NC and scheduling deposition date of December 9, 2025. This scheduled date fell 18 days after the deadline for taking any such Rule 30(b)(6) depositions under the Phase One Scheduling Order. *See* Doc. 122, Order dated June 30, 2025, reflecting at page 2 that the due date to complete all Rule 30(b)(6) depositions was November 21, 2025.

Plaintiff has objected to the deposition.  Further, on November 11, 2025, Plaintiff wrote to Defendants and listed a series of documents Plaintiff would need to use if the deposition did occur, which Defendants had marked "confidential" or "attorney eyes only."  In this and subsequent correspondence, Plaintiff requested that Defendants withdraw the confidentiality designation and allow the Plaintiff to use the documents at the deposition if there was going to be one.  However, Defendants refused to withdraw the confidentiality only designations.

Further, Blue Cross NC will not agree under the Protective Order to keep "confidential" documents introduced at the deposition confidential and not consider or use them for any other purpose aside from being deposed in this lawsuit.  Plaintiff supports Blue Cross NC in its position. Defendants have produced documents as recently as the last several weeks, which Plaintiffs would be unable to use at a deposition of Blue Cross NC, even though these documents describe bills sent under CPT code 99285 to Blue Cross NC.

On November 14, 2025, Defendants filed a motion requesting that the existing deadline under the Scheduling Order be extended to allow Defendants to take the Rule 30(b)(6) depositions of Blue Cross NC, the City of Plaquemine, the Louisiana Municipal Risk Management Association, and Risk Management, Inc.  Doc. 157.  That motion remains pending.

On November 21, 2025, Plaintiff filed a motion requesting that the deadline be extended solely to allow the Plaintiff to take the Rule 30(b)(6) deposition of the Defendants.  Doc. 161.  That motion remains pending.

On November 24, 2025, the Court entered its Order resolving the motions to compel filed by Plaintiff at Docs. 132, 134 and 136 and the motion for a protective order filed by Defendants at Doc. 142.  The Court's Order at Doc. 163 reflects that the Court granted Plaintiff's motion to

compel with regard to various Rule 30(b)(6) deposition topics for the deposition of Defendants. The Plaintiff has reached out to Defendants with regard to setting a date for this deposition.

On December 1, 2025, Plaintiff wrote to Defendants requesting they confirm the deposition of Blue Cross NC noticed for December 9, 2025 would not go forward because 1) it falls after the November 21, 2025 deadline for depositions under the Scheduling Order, and 2) because Plaintiff would need to use Defendants' produced documents labeled "confidential" at the deposition but Defendants refuses to let Plaintiff use those documents at a deposition of Blue Cross NC under terms Blue Cross NC will accept. *See* Counsel Dec., attaching meet and confer correspondence. However, Defendant wrote on December 1, 2025 stating that they intend to proceed with the deposition on December 9 even though it falls outside of the Scheduling Order. *See id.* Defendant has also declined to agree to remove the confidentiality designations on the documents Plaintiff had listed as being of relevance for a Blue Cross NC deposition. *See id.*

### 3. <u>Facts Regarding the Relevant Documents.</u>

The documents that Plaintiff would have need of using in the event that the Court allows the deposition of Blue Cross NC during Phase One of discovery in this case are attached to the Declaration of Counsel filed herewith. The documents as summarized below reflect facts central to the class certification motion and forthcoming expert reports regarding the RICO conspiracy, and which Plaintiff would need to ask Blue Cross NC about at the deposition.

Plaintiff is not aware of any basis for any contention that the below-discussed documents are trade secret or confidential. Plaintiff does not seek to de-designate any contracts between Team Health entities and Blue Cross NC at this time. Plaintiff below discusses the documents in the order as they are cited in the Declaration of Counsel.

9

**Lempert Dep. Ex. 8, Bates TH_BUN_PLA_138598:**

Attached as Exhibit 10 to the Declaration of Counsel is a true and accurate copy of a document produced by Defendants in discovery and identified as Lempert Dep. Ex. 8, Bates TH_BUN_PLA_138598. The document includes the following information:



10

It is necessary for Plaintiff to provide factual background in order to explain the relevance and importance of this and the other documents as well as why they should not be deemed trade secrets or confidential.

For background, Plaintiffs contend that during the pertinent times and throughout the proposed class period beginning on January 1, 2017 and running up through the present, the Defendants used a uniform "coding grid" governing how their human coders were to code medical charts for the purposes of outgoing bills for emergency room ("ER") services. The uniform coding grid was used along with a uniform set of coding policies.

Plaintiff contends that these uniform Team Health coding policies were used for purposes of all of the ER bills that were sent out during the class period. Further, all of the relevant bills were sent on a form known as a Medicare CMS Form 1500 or its electronic equivalent.

Defendants originally, years ago, ███████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████

However, prior to when the class period opened, Defendants intentionally, recklessly, and secretly ████████████████████████████████████████████████. The result was to allow the enterprise to send out far more bills that were billed at the more lucrative level five code (CPT 99285) rather than the less lucrative lower-numbered codes (99281 to 99284).

In this regard, the document identified above as Bates TH_BUN_PLA_138598 reflects that ████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████. While the document reflects a 2022 date, the evidence reflects that in fact the email dates from years earlier, most likely 2016. The 2022

11

date was believed to have been inaccurately placed on the document as an artifact of a "trash can" feature of Team Health's email system. As of 2016, it is known from other documents that Team Heath was performing reviews with outside consultants, including Cher Fieri and ████████, who vetted Team Health's coding policies. ████████████████████████████████ ████████████████████████████████ (Defendants refuse to produce any documents regarding the input of either outside expert). It is known that Team Health hired both Ms. Fieri and ████████ to review their coding policies during the 2015-16 time frame. It is further known that several years later, Ms. Fieri found that Team Health was upcoding at level 99285 over 60% of its level five bills, in a probe sample of 30 bills. See attachments to complaint filed in *Celtic Ins. Co. v. Team Health Holdings, Inc.*, No. 3:2020cv00523 (E.D. Tenn.).

The above-excerpted portion of the document reflects ████████████████████



Plaintiff would use the above document at the deposition to question Blue Cross NC's representative on whether to date Blue Cross NC was ever apprised of any of these facts by Team Health. Plaintiff is entitled to engage in discovery to show that Team Health had internal corporate knowledge of the upcoding fraud, and systematically concealed it from insurers and TPAs, during the entirely of the proposed class period extending from January 1, 2017 to present.

**Lempert Dep. Ex. 10, Bates TH_BUN_PLA_187524 to 187535.**

This is a document which if a deposition of Blue Cross NC is to proceed, Plaintiff must be able to use in all fairness with the witness. It begins by reflecting:

Case 3:22-cv-00420-DCLC-DCP    Document 169    Filed 12/03/25    Page 12 of 24
PageID #: 4934



As shown above, the document reflects a time frame of 2016.  See the references to the dates of 3/22/2016 and 3/4/2016 in the main body of the email.  The date reflected at the top of 7/26/2021 is believed to be in error and the actual date of the email is believed to be circa 2016.

The document reflects that ███████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████.  Plaintiff's counsel needs to be able to show documents to this to the Blue Cross NC witness if a deposition is going to occur.  This is because the memos reflect important admissions in the case which Plaintiffs contend support an inference of RICO culpability and concealment on a classwide basis.  These internal memos, ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████

**Lempert Dep. Ex. 14, Bates TH_BUN_PLA_69902 to 69904.**

This document reflects how during the putative class period of January 1, 2017 forward, Defendants were employing uniform and common internal corporate policies, across the class, for coding. These uniform policies ████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████. Plaintiff is entitled to use the document at any deposition of Blue Cross NC so as to compare the internal Team Health policy to the policies employed by Blue Cross NC. The document is dated July 20, 2017. Bates 69902. The document references ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████

**Lempert Dep. Ex. 16, Bates TH_BUN_PLA_69909 to 69910.**

This document reflects another "confidential" internal corporate policy of Defendants. It was in effect during the putative class period. *See* page 1, Bates 69909, referencing date of March 9, 2018. Like the prior document, this document reflects ██████████████████████ █████████████████████████████████████ *See* page 2, Bates 69910.

**Lempert Dep. Ex. 17, Bates TH_BUN_PLA_444680 to 444683.**

Plaintiff contends that it shows that as of 2016 – before the January 1, 2017 opening date for the putative class period – ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ Plaintiff

needs to be able to use this document to examine the Blue Cross NC witness.

**Lempert Dep. Ex. 18, Bates TH_BUN_PLA_1 to 5.**

This is a copy of the Team Health HCFS coding grid as it existed circa 2020. If Team Health deposes Blue Cross NC, Defendants are expected to seek to question Blue Cross NC regarding its policies. Plaintiff should be allowed to show the witness Team Health's own policies. Defendants have included coding and auditing policies as deposition topics. Plaintiff should accordingly be entitled to question the deponent about Team Health's coding grid.

**Policy No. 4.4.18, Bates TH_BUN_PLA_3321 to 3330.**

This document is dated from within the putative class period. *See* page 1, Bates 3321, stating date of August 23, 2019. The document reflects that ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ Bates 3321.

In this regard, as noted above, Defendants recently produced a massive new spreadsheet purporting to reflect ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████ However, Defendants have labeled the entire spreadsheet confidential.

Accordingly, Plaintiff would be unable to use it at a deposition of Blue Cross NC.

The document supports Plaintiff's contention that █████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████

**Bates TH_BUN_PLA_460225.**

This document corroborates the RICO enterprise's ████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████

The document is relevant and Plaintiff should be allowed to use it at any deposition of Blue Cross NC. Furthermore, there is no basis for a claim of trade secret confidentiality of this document or any of the others discussed above. The document is believed to be several years old. It simply reflects internal compliance policies (or lack thereof) of Team Health, not any proprietary secret intellectual property such as a chemical formula or computer code.

**Shelly Hosey email chain, 4/25/18, Bates TH_BUN_PLA_420120 to 420124.**

This document corroborates Plaintiff's contentions regarding █████████████ as discussed above. The document reflects that as of 2018, Defendants █████████████████



The document supports Plaintiff's claim not only for RICO and unjust enrichment, but also for fraudulent concealment and classwide estoppel such that the statute of limitations begins and the class period should open on January 1, 2017, and not a later date.

**Operations Document No. 3.12, Bates TH_BUN_PLA_2788 to 2809.**

   This is another audit policy document relevant because it corroborates Plaintiff's contentions regarding ███████████████████████████████████████████████

**Bristow Dep. Ex. 4, Bates TH_BUN_PLA_432367 to 432368.**

This document along with the subsequent documents reflect that Defendants were

███████████████████████████████████████████████████████████ At the

deposition of Blue Cross NC, Plaintiff would introduce the document to inquire whether Blue

Cross NC had corporate knowledge of this or ███████████████████████████████████

███████████████████████

**Bristow Dep. Ex. 5, Bates TH_BUN_PLA_432366.**

This document goes with the prior document. It dates the ██████████ to 2017, within the

putative class period.

**Bristow Dep. Ex. 6, Bates TH_BUN_PLA_432365.**

This document goes with the prior two documents. It reflects that in 2019, the ██████

███████████████████████████████████████████████████████████████████

███████ Given that Defendants have included audit and payment policies among their deposition

topics, clearly Plaintiff should be able to question Blue Cross NC regarding audit and payment

policies ██████████████████████████.

**Bristow Dep. Ex. 18, Bates TH_BUN_PLA_216691 to 216703.**

Defendants are expected to try to ask Blue Cross NC lines of questions meant to portray

ER coding as highly variable and subjective with many different applicable possible standards.

Plaintiff is entitled to refute this argument by pointing the witness to documents produced by the

HCFS Defendant and corroborating the conclusion that in fact, ER medical coding is relevantly

objective and uniform following a single standard. *See* Bates 216692.

**Bristow Depo Ex. 21, Bates TH_BUN_PLA_5220 to 5266.**

Another ██████████████████████████████████████████████████

Relevant for the same reasons as discussed above with regard to the Fidelis documents.

**Bristow Dep. Ex. 28, Bates TH_BUN_PLA_138597.**

Another document relevant to the ██████████████ discussed above.

**Molina Healthcare 9/27/24 package, Bates TH_BUN_PLA_455078 to 455226.**

Relevant for similar reasons as the ██████████████ documents discussed above.

**Policy No. 15.1, Bates TH_BUN_PLA_2710 to 2713.**

Relevant for same reasons as the other coding policy documents discussed above.

**Burnette Dep. Ex. 30, Bates TH_BUN_PLA_ TH BUN PLA 452171 to 452176.**

This email reflects Defendants' interactions with a ████████████████████████.

Plaintiff should be allowed to ask Blue Cross NC questions at the deposition regarding ████

██████████████████ and their interactions with Team Health entities.

1. **Legal Standard.**

   a. **Motion for Protective Order/to Quash.**

A party to a case may seek discovery through a subpoena to a non-party under Federal Rule of Civil Procedure 45(c). "When a party seeks to limit discovery from a non-party, it may file a motion for protective order or seek to quash the subpoena." *See Forefront Machining Tech., Inc. v. Sarix SA*, No. 3:19-cv-383, 2021 WL 3615725 (S.D. Ohio Aug. 16, 2021).

Federal Rule of Civil Procedure 26(c) provides that a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." To prevail on a motion for protective order, the party must "show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance (as now amended) or that a

discovery request would impose an undue burden or expense or is otherwise objectionable." *Forefront Machining Tech., Inc., supra, quoting Bros. Trading Co. v. Goodman Factors,* No. 1:14-CV-975, 2016 WL 9781140, at *2 (S.D. Ohio Mar. 2, 2016); *see McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 242) (N.D. Tex. 2016). Alternatively, on timely motion, a subpoena may be quashed if it "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A); *Forefront Machining Tech., Inc., supra*.

### b. Motion to Challenge Confidentiality Designation.

There is a common law right and a First Amendment right to public access, transparency of judicial records and of open courts. It is Defendants' burden to show why the presumption in favor of public access should be overcome and the documents found to be subject to redaction or sealing. *See* this Court's Sanding Order filed at Doc. 5, at page 1, citing *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016) (describing the very high barrier a party must surmount to overcome the presumption of openness as to a court's record). The burden of overcoming the presumption of public access and transparency is borne by the party that seeks to seal the documents. Doc. 5, citing *In re Cendant Corp.*, 260 F.3d 183, 194 (3d Cir. 2001). "Only the most compelling reasons can justify non-disclosure of judicial records." *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476 (6th Cir. 1983).

### 2. Argument.

### a. The Notice and Subpoena Should Be Quashed.

The Court should grant Plaintiff's motion for a protective order and to quash the deposition notice and subpoena to Blue Cross NC. As discussed above, the notice was served belatedly and set a date for the deposition that fell after the Court-established due date to complete all such depositions. Defendants fail to show good cause under the circumstances. Further, because

Defendants refuse to remove the confidentiality designations on the relevant documents, they seek to stymie Plaintiff's ability to defend itself and to ask questions bearing directly on the class certification issues at the deposition. A protective order should be entered barring the deposition.

Plaintiff shows good cause for entry of the protective order. Good cause exists when the party moving for the protective order "articulate[s] specific facts showing 'clearly defined and serious injury' resulting from the discovery sought…" *Nix v. Sword*, 11 Fed. App'x 498, 500 (6th Cir. 2001) (citing *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)); *see also In re Skelaxin Antitrust Litig.,* 292 F.R.D. 544, 549 (E.D. Tenn. 2013) ("To show good cause, the moving party must articulate specific facts that show a clearly defined and serious injury resulting from the discovery sought; mere conclusory statements will not be sufficient."). Here, it will cause substantial injury to the Plaintiff if it is required to proceed with the deposition on December 9 under these circumstances. Plaintiff is even now working with experts on expert reports due in the first week of January 2026. And, Plaintiff would be unable to introduce the relevant documents described above at the deposition, due to Defendants' defective confidentiality designations.

## b. **The Subject Documents Should Be Deemed Non-Confidential.**

As discussed above, there is no basis for the subject documents to be deemed confidential. Defendants cannot carry their heavy burden to show why these documents should be filed under seal. The presumption of public access weighs heavily against Defendants. Defendants' efforts to characterize the documents as trade secrets fail. The documents are not trade secrets. Rather, they are documents reflecting coding and audit policies.

There is a strong presumption for court records to be open to the public, and thus, there is a heavy burden to show why any records should be sealed. *See, e.g., Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1176-79 (6th Cir. 1983). "To meet this burden, the party seeking a

seal must show (1) a compelling interest in sealing the records; (2) that the interests in sealing outweigh the public's right of access; and (3) that the proposed seal is narrowly-tailored." *Durbin v. C&L Tiling Inc.*, No. 3:18-CV-334-RGJ, 2019 WL 4615409, at *14 (W.D. Ky. Sept. 23, 2019) (citing *Rudd Equip. Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 593-94 (6th Cir. 2016)). The Sixth Circuit has also recognized that where documents reflect trade secrets, that fact will generally suffice to satisfy the burden of showing a compelling reason for sealing the documents, however, the basis for trade secret protection must be clearly established. *See Kondash v. Kia Motors America, Inc.,* 767 F. App'x 635, 638 (6th Cir. 2019). Nonetheless, "even if a district court finds that a trade secret exists, it must still determine whether public interest outweighs the moving party's interests in protecting their trade secret." *Id.* Here, Defendants cannot show that the documents at issue contain any data that could unfairly benefit competitors. As shown, some of the documents date back to 2016. It is difficult to understand how compliance information from 2016 could be proprietary trade secrets barred from disclosure. *Compare Smith v. Unum Life Ins. Co. of America,* No. 1:21-cv-00294KAC0CHS, 2023 WL 7991809 at * 3 (E.D. Tenn. Sept. 26, 2023) (finding that Defendant's request to seal was "narrowly tailored").

### 3. <u>Conclusion.</u>

Wherefore, Plaintiff, Buncombe County, North Carolina, respectfully requests that the Court to enter a protective order barring the deposition notice and subpoena issued by Defendants, directed to Blue Cross NC, and/or, finding that certain documents produced by Defendants in this matter should not have either "confidential" or "attorney eyes only" status.

Dated:  December 3, 2025.

          <u>s/Mona Lisa Wallace</u>
          Mona L. Wallace
          John S. Hughes
          Olivia B. Smith
          WALLACE & GRAHAM, P.A.
          525 N. Main St.
          Salisbury, NC 28144
          Phone: (704) 633-5244
          mwallace@wallacegraham.com
          jhugh.es@wallacegraham.com
          osmith@wallacegraham.com

          Mary Parker #06016
          Parker & Crofford
          5115 Maryland Way
          Brentwood, TN 37027
          615-244-2445 Tel
          mparker@parker-crofford.com

          Janet Varnell, Esq.*
          Florida Bar No. 0071072
          VARNELL AND WARWICK, P.A.
          1101 E. Cumberland Ave.
          Suite 201H, #105
          Tampa FL 33602
          Tel.: (352) 753-8600
          jvarnell@vandwlaw.com

          Robert N. Hunter, Jr.*
          Higgins Benjamin, PLLC
          301 N Elm St Suite 800
          Greensboro, NC 27401
          Phone: (336) 275-7577
          rnhunterjr@greensborolaw.com

          *admitted pro hac vice.

          *Attorneys for Plaintiff Buncombe County NC*

**CERTIFICATE OF SERVICE**

I hereby certify under Rule 5 of the Federal Rules of Civil Procedure that a true and exact copy of the foregoing document was served on the all counsel of record via ECF e-filing.

Dated: December 3, 2025.

<u>s/Mona Lisa Wallace</u>
Mona L. Wallace
John S. Hughes
Olivia B. Smith
WALLACE & GRAHAM, P.A.
525 N. Main St.
Salisbury, NC 28144
Phone: (704) 633-5244
mwallace@wallacegraham.com
jhughes@wallacegraham.com
osmith@wallacegraham.com